J-A02017-18

2018 PA Super 197

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICKY L. OLDS | : | |
| | : | |
| Appellant | : | No. 1772 WDA 2016 |

Appeal from the Judgment of Sentence November 21, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0006857-1979,
CP-02-CR-0007090-1979

BEFORE:  BOWES, OLSON and KUNSELMAN, JJ.

OPINION BY OLSON, J.:                                   **FILED JULY 3, 2018**

In 1980, Appellant, Ricky L. Olds, was convicted of second-degree murder and subsequently sentenced to a mandatory term of life imprisonment without the possibility of parole ("LWOP").  During the incident in question, Appellant's co-conspirator shot and fatally wounded a patron while robbing a tobacco store.  At that time, Appellant was 14 years old.  After the Supreme Court of the United States' decisions in **Miller v. Alabama**, 567 U.S. 460 (2012)[1] and **Montgomery v. Louisiana**, 136 S.Ct. 718 (2016),[2] Appellant

---

[1] In **Miller**, the Supreme Court of the United States held that sentencing juvenile homicide offenders capable of rehabilitation to LWOP violates the Eighth Amendment.

[2] In **Montgomery**, the Supreme Court of the United States held that the rule announced in **Miller** applied retroactively to cases on collateral review.

received a new sentencing hearing. At the new sentencing hearing on November 21, 2016, the trial court sentenced Appellant to 20 years to life imprisonment. Appellant appeals from that judgment of sentence arguing that the maximum term of life imprisonment imposed upon a juvenile convicted of second-degree murder violates the Eighth Amendment of the United States Constitution[3] as interpreted by **Miller** and **Montgomery**.

We hold that a mandatory life maximum for a juvenile convicted of second-degree murder is not cruel and unusual punishment. In so doing, we explain why this Court's interpretation of 18 Pa.C.S.A. § 1102(b) in **Commonwealth v. Seskey**, 170 A.3d 1105 (Pa. Super. 2017) was legally correct and why it does not foreclose Appellant's constitutional challenge. Accordingly, we affirm.

The factual background of this case is as follows. In the early morning hours of October 9, 1979, Appellant (who was 14 years old), Claude Bonner ("Bonner") (who was 18 years old), and Tommy Allen ("Allen") (who was 16 years old) were driving around Pittsburgh, Pennsylvania. Allen suggested

---

[3] "The Eighth Amendment [of the United States] Constitution[ is] applicable to the States through the Due Process Clause of the Fourteenth Amendment[.]" **Baze v. Rees**, 553 U.S. 35, 47 (Roberts, C.J., opinion announcing the judgment of the court) (citation omitted). Although Appellant does not raise a claim under Article I, Section 13 of the Pennsylvania Constitution, we note that "[t]he Pennsylvania prohibition against cruel and unusual punishment is coextensive with the Eighth and Fourteenth Amendment of the United States Constitution." **Commonwealth v. Bonner**, 135 A.3d 592, 597 n.18 (Pa. Super. 2016), *appeal denied*, 145 A.3d 161 (Pa. 2016) (citation omitted).

robbing Fort Wayne Cigar Store and Appellant agreed with this plan. When they entered the store, Allen and Appellant witnessed Thomas Bietler ("Bietler") make a purchase and noticed that he possessed a significant amount of United States currency. Allen followed Bietler from the store and shot him three times. Bietler died as a result of the attack. Bonner, Allen, and Appellant then fled the scene.

The procedural history of this case is as follows. On April 2, 1980, Appellant was convicted of second-degree murder,[4] robbery,[5] and criminal conspiracy.[6] On April 28, 1981, the trial court reluctantly sentenced Appellant to the then-mandatory term of LWOP for the second-degree murder conviction.[7] On direct appeal, this Court affirmed Appellant's judgment of sentence. **Commonwealth v. Olds**, 469 A.2d 1072 (Pa. Super. 1983).

On August 24, 1984, Appellant filed a *pro se* petition pursuant to the Post-Conviction Hearing Act ("PCHA"), 42 Pa.C.S.A. § 9541 *et seq*. (West 1984).[8] Counsel was appointed and filed an amended petition. On March 9, 1990, the PCHA court denied the petition. This Court vacated that decision

---

[4] 18 Pa.C.S.A. § 2502(b) (West 1980).

[5] 18 Pa.C.S.A. § 3701(a)(1)(i) (West 1980).

[6] 18 Pa.C.S.A. § 903 (West 1980).

[7] The trial court believed a LWOP sentence was unjust; however, it was required to impose that sentence.

[8] The PCHA was the predecessor to the Post-Conviction Relief Act.

and remanded for an evidentiary hearing. **Commonwealth v. Olds**, 589 A.2d 1176 (Pa. Super. 1991) (unpublished memorandum). Our Supreme Court reversed, holding that Appellant was not entitled to an evidentiary hearing and the dismissal of Appellant's PCHA petition should be reinstated. **Commonwealth v. Olds**, 606 A.2d 898 (Pa. 1992) (*per curiam*).

On July 13, 2010, Appellant filed a *pro se* petition pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. On October 15, 2015, the PCRA court dismissed the petition. This Court affirmed and our Supreme Court denied allowance of appeal. **Commonwealth v. Olds**, 32 A.3d 845 (Pa. Super. 2011) (unpublished memorandum), *appeal denied*, 34 A.3d 828 (Pa. 2011). On August 20, 2012, Appellant filed a second *pro se* PCRA petition. In it, Appellant alleged that his LWOP sentence was unconstitutional in light of **Miller**. Counsel was appointed. However, after our Supreme Court held that **Miller** did not apply retroactively, **Commonwealth v. Cunningham**, 81 A.3d 1, 9–11 (Pa. 2013), the PCRA court dismissed the petition. This Court affirmed the denial of relief. **Commonwealth v. Olds**, 134 A.3d 108, 2015 WL 6509158 (Pa. Super. 2015) (unpublished memorandum). While Appellant's petition for allowance of appeal was pending, the Supreme Court of the United States issued **Montgomery**. Therefore, our Supreme Court granted allowance of appeal and vacated this Court's order affirming the dismissal of Appellant's petition. **Commonwealth v. Olds**, 133 A.3d 3 (Pa. 2016) (*per curiam*). Subsequently,

this Court reversed the PCRA court's order dismissing Appellant's petition and remanded for resentencing. ***Commonwealth v. Olds***, 145 A.3d 778, 2016 WL 1436935 (Pa. Super. 2016) (unpublished memorandum).

On remand, the trial court resentenced Appellant to 20 years to life imprisonment with credit for over 37 years of time served.[9] Appellant did not file a post-sentence motion. This timely appeal followed.[10]

Appellant presents one issue for our review:

> Did the [trial] court err [in] holding that it was required to impose a life maximum on an individual who did not kill or intend to kill?

Appellant's Brief at 2.

Appellant's lone appellate issue challenges the legality of his sentence.[11] Challenges to the legality of a sentence present pure questions of law; therefore, our standard of review is *de novo* and our scope of review is

---

[9] This made Appellant immediately eligible for parole and he has since been granted parole.

[10] On December 16, 2016, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). ***See*** Pa.R.A.P. 1925(b). On January 4, 2017, Appellant filed his concise statement. On April 19, 2017, the trial court issued its Rule 1925(a) opinion. Appellant's lone appellate issue was included in his submission.

[11] Although Appellant included in his brief a statement of reasons for permitting an appeal of the discretionary aspects of his sentence pursuant to Pennsylvania Rule of Appellate Procedure 2119(f), he did not challenge the discretionary aspects of his sentence in a post-sentence motion or at the sentencing hearing. Accordingly, any challenge to the discretionary aspects of his sentence is waived. ***See Commonwealth v. Machicote***, 172 A.3d 595, 602 (Pa. Super. 2017) (citation omitted).

plenary. ***Commonwealth v. Rodriguez***, 174 A.3d 1130, 1147 (Pa. Super. 2017) (citation omitted).

Appellant cites two reasons to support his claim that the trial court was not required to impose life imprisonment as a maximum sentence. First, he contends that the governing statutes do not mandate a maximum sentence of life imprisonment because, in light of ***Miller***, no valid sentencing scheme exists for juveniles convicted of second-degree murder prior to June 25, 2012. Second, he contends that, to the extent the statutes require such a sentence, they are unconstitutional when applied to juveniles who did not kill or intend to kill.[12] The Commonwealth argues that the disposition of both of these claims is controlled by ***Seskey***.

We first address Appellant's argument that the trial court was not statutorily required to sentence him to a maximum term of life imprisonment. We agree with the Commonwealth that our decision in ***Seskey*** controls this question because it is almost on all fours with the present case. In ***Seskey***,

---

[12] Appellant's conviction involved second-degree murder. In such cases, intent to kill is inferred from the commission of a felony. ***Commonwealth v. DeHart***, 516 A.2d 656, 669 (Pa. 1986) (citation omitted). Appellant offers no argument to alter the legal consequences, such as inferred intent to kill, that flow from a second-degree murder conviction. Instead, Appellant appears to argue, strictly for sentencing purposes, that intent to kill may not be inferred for juveniles because they have diminished capacity to appreciate outcomes. Appellant does not explain how or why when fixing a sentence trial courts can set aside the legal consequences that flow from a second-degree murder conviction. Thus, his assertion that he did not intend to kill seems questionable, at best.

- 6 -

the defendant was convicted of first-degree murder prior to June 25, 2012, *i.e.*, prior to the effective date of 18 Pa.C.S.A. § 1102.1 (which sets forth the mandatory minimum and maximum sentences for juveniles convicted of first and second-degree murder). After **Montgomery**, Seskey was resentenced to 13 to 26 years' imprisonment. The Commonwealth appealed and this Court vacated the judgment of sentence and remanded for imposition of a sentence which included a maximum term of life imprisonment. In so doing, this Court held "that our Supreme Court's recent decision in **Commonwealth v. Batts**, 163 A.3d 410 (Pa. 2017) ('**Batts II**') requires that an individual convicted of first or second-degree murder for a crime committed as a minor be sentenced to a maximum term of life imprisonment." **Seskey**, 170 A.3d at 1105-1106 (footnote omitted).

In his brief, Appellant argues that this holding was too broad and that the language regarding second-degree murder was dicta. In **Seskey**, this Court quoted **Batts II** as follows:

> For those defendants [convicted of first or second-degree murder prior to June 25, 2012] for whom the sentencing court determines a [LWOP] sentence is inappropriate, it is our determination here that they are subject to a mandatory maximum sentence of life imprisonment as required by section 1102(a), accompanied by a minimum sentence determined by the common pleas court upon resentencing[.]

**Seskey**, 170 A.3d at 1108 (internal alterations in original), *quoting* **Batts II**, 163 A.3d at 421.

Appellant notes that **Batts II** was a case in which the defendant received a maximum sentence of life imprisonment for first-degree murder. Our Supreme Court, in **Batts II**, did not confront a situation in which a juvenile had been convicted of second-degree murder. Thus, according to Appellant, **Batts II** should not extend to juveniles convicted of second-degree murder and **Seskey**'s statement incorrectly implies that it did. Appellant therefore contends that the above quoted passage was not an accurate representation of our Supreme Court's **Batts II** decision.

We conclude that **Seskey**'s holding is a correct statement of the law with respect to juveniles convicted of second-degree murder prior to June 25, 2012. To understand why, a brief review of sections 1102[13] and 1102.1[14] is

---

[13] Section 1102 mandates that any individual convicted of first-degree murder prior to June 25, 2012 be sentenced to death or life imprisonment and any individual convicted of second-degree murder prior to June 25, 2012 be sentenced to life imprisonment. It further mandates that, after June 24, 2012, any person 18 years of age or older convicted of first-degree murder be sentenced to death or life imprisonment and any person 18 years of age or older convicted of second-degree murder be sentenced to life imprisonment. **See** 18 Pa. C.S.A. § 1102(a) and (b).

[14] As this Court explained in **Seskey**:

> Section 1102.1 provides that an individual between the ages of 15 and 17 years old convicted of first-degree murder after June 24, 2012 must be sentenced to a maximum term of life imprisonment. The minimum term of imprisonment for such an offender can be set anywhere from 35 years to life, *i.e.*, LWOP. Section 1102.1 further provides that an individual under 15 years old convicted of first-degree murder after June 24, 2012 must be sentenced to a maximum term of life imprisonment. The minimum term of

necessary. On June 24, 2012, the Supreme Court of the United States issued *Miller*. Thereafter, our General Assembly enacted section 1102.1 and made it retroactive for juveniles convicted of first or second-degree murder after June 24, 2012. Moreover, our General Assembly amended section 1102 to clarify that it does not apply to juveniles convicted of first or second-degree murder after June 24, 2012. Section 1102, therefore, applies to adults convicted of first or second-degree murder and juveniles convicted of first or second-degree murder prior to June 25, 2012. Section 1102.1 applies to juveniles convicted of first or second-degree murder after June 24, 2012. Hence, sections 1102 and 1102.1 must be read *in pari materia*. **See Commonwealth v. Anderson**, 169 A.3d 1092, 1102 (Pa. Super. 2017), *citing* 1 Pa.C.S.A. § 1932.

Although **Batts II** was a case governed by section 1102(a) (which mandates a defendant convicted of first-degree murder be sentenced to life

---

imprisonment for such an offender can be set anywhere from 25 years to life, *i.e.*, LWOP.

Section 1102.1 provides that an individual between the ages of 15 and 17 years old convicted of second-degree murder after June 24, 2012 must be sentenced to a maximum term of life imprisonment. The minimum term of imprisonment for such an offender [must be at least 30 years]. Section 1102.1 further provides that an individual under 15 years old convicted of second-degree murder after June 24, 2012 must be sentenced to a maximum term of life imprisonment. The minimum term of imprisonment for such an offender [must be at least 20 years].

**Seskey**, 170 A.3d at 1108 (internal citations omitted).

- 9 -

imprisonment), the same statutory construction principles apply to section 1102(b) (which mandates a defendant convicted of second-degree murder be sentenced to life imprisonment). First, the text of the two sections is almost identical. Section 1102(a) provides that "a person who has been convicted of a murder of the first degree or of murder of a law enforcement officer of the first degree shall be sentenced to death or to a term of life imprisonment[.]" 18 Pa.C.S.A. § 1102(a)(1). Section 1102(b) similarly provides that "a person who has been convicted of murder of the second degree . . . or of second degree murder of a law enforcement officer shall be sentenced to a term of life imprisonment." 18 Pa.C.S.A. § 1102(b). "Absent contrary indication, words that have a clear meaning in one place are interpreted the same throughout a statutory section." *Frank Burns, Inc. v. Interdigital Commc'ns Corp.*, 704 A.2d 678, 681 (Pa. Super. 1997), *appeal denied*, 724 A.2d 935 (Pa. 1998) (citation omitted). In *Batts II*, our Supreme Court held that the words in section 1102(a) have a clear meaning, *i.e.*, a person convicted of first-degree murder must be sentenced to a mandatory minimum of life imprisonment. Because there is no indication that the words in subsection (b) have a contrary meaning, section 1102(b) must be interpreted to require a maximum sentence of life imprisonment for juveniles convicted of second-degree murder.

Other tools of statutory interpretation produce the same result. Subsequent to *Miller*, our General Assembly enacted 18 Pa.C.S.A. § 1102.1

which governs the sentencing of juveniles convicted of first or second-degree murder after June 24, 2012. In determining whether section 1102(a) mandated a life maximum in **Batts II**, our Supreme Court found persuasive the fact that section 1102.1(a) maintains a mandatory life maximum for juveniles convicted of first-degree murder. **See Batts II**, 163 A.3d at 442-443. Similarly, section 1102.1(c) maintains a mandatory life maximum for juveniles convicted of second-degree murder. 18 Pa.C.S.A. § 1102.1(c).[15] Section 1102.1(c) merely sets the mandatory minimum term of imprisonment for juveniles convicted of second-degree murder lower than that for those convicted of first-degree murder. **Compare** 18 Pa.C.S.A. § 1102.1(a) *with* 18 Pa.C.S.A. § 1102.1(c). Hence, the General Assembly's enactment of section 1102.1(c) also indicates that juveniles convicted of second-degree murder must be sentenced to a maximum term of life imprisonment.

Throughout **Batts II**, our Supreme Court emphasized that section 1102(a) is constitutionally sound. Our Supreme Court held that it is the interaction of section 1102(a) with 61 Pa.C.S.A. § 6137(a)(3) (which bars parole for individuals sentenced to life imprisonment) that causes constitutional problems when applied to juvenile offenders. **See Batts II**, 163 A.3d at 439-441. Thus, our Supreme Court held that the appropriate remedy is to exempt juveniles convicted of first-degree murder prior to June

---

[15] Section 1102.1(c) does not differentiate between those juveniles who killed or intended to kill and those that were convicted under accomplice or co-conspirator liability theories.

- 11 -

25, 2012 from the mandates of section 6137(a)(3). ***See id.*** at 439. In other words, the **mandatory** imposition of LWOP upon juveniles was deemed unconstitutional. ***Batts II***, however, kept in place the requirements of section 1102(a), *i.e.*, that juveniles convicted of first-degree murder must be sentenced to a maximum term of life imprisonment. ***See id.*** at 439-441.

***Seskey*** implicitly held that there was no reason to follow a different approach when assessing the constitutionality of section 1102(b). As our Supreme Court did in ***Batts II*** with respect to section 1102(a), we hold that it is not the term of life imprisonment that makes applying section 1102(b) to juvenile offenders unconstitutional. Instead, it is the mandatory nature of that punishment when section 6137(a)(3) (which prohibits parole) is applied that raises constitutional concerns. Thus, section 6137(a)(3) cannot be applied to juveniles convicted of second-degree murder prior to June 25, 2012. In other words, such juveniles must be sentenced to a maximum period of life imprisonment; however, they are eligible for parole after a term-of-years specified by the trial court.

Having set forth the correct statutory construction of section 1102(b), we turn to Appellant's argument that, with this construction, section 1102(b) is unconstitutional when applied to juvenile offenders who did not kill or intend to kill. ***Seskey*** did not address this constitutional challenge and, therefore, we are not bound by ***Seskey*** when determining if section 1102(b) violates the Eighth Amendment as interpreted by ***Miller***. Thus, we next analyze whether

application of section 1102(b), by itself and without resort to section 6137(a)(3), to juveniles convicted of second-degree murder prior to June 25, 2012, and who did not kill or intend to kill, constitutes cruel and unusual punishment.

Appellant's argument is primarily based on Justice Breyer's concurring opinion in *Miller*. The Supreme Court of the United States' opinion in *Miller* not only disposed of Miller's appeal but also disposed of Kuntrell Jackson's ("Jackson's") challenge to a LWOP sentence following his conviction for capital murder. *See Miller*, 567 U.S. at 560. Jackson was convicted of capital murder under a co-conspirator theory of liability for a murder committed during the course of an enumerated felony. *See id.* at 567. Like Pennsylvania, Arkansas law provides that intent is inferred when a defendant commits a homicide under such circumstances. *See* Ark. Code Ann. § 5-10-101(a) (defining capital murder).

Justice Breyer, writing for himself and Justice Sotomayor, opined that if Arkansas

> continues to seek a sentence of **life without the possibility of parole** for [] Jackson, there will have to be a determination whether Jackson killed or intended to kill the robbery victim. In my view, without such a finding, the Eighth Amendment as interpreted in *Graham* [*v. Florida*, 560 U.S. 48 (2010)[16]] forbids sentencing Jackson to such a sentence, regardless of whether its application is mandatory or discretionary under state law.

---

[16] *Graham* prohibits sentencing juveniles to LWOP for nonhomicide offenses.

*Miller*, 567 U.S. at 489-490 (Breyer, J., concurring) (internal quotation marks, alterations, and citation omitted; emphasis added). According to Appellant, this language indicates that a mandatory maximum sentence of life imprisonment for juvenile homicide offenders who did not kill or intend to kill violates the Eighth Amendment.

This argument is without merit. First, Justice Breyer authored a concurring opinion, not the majority. Thus, it is not binding authority. Moreover, the plain language of Justice Breyer's concurrence only references LWOP sentences. There is nothing in Justice Breyer's concurring opinion, or any other opinion in *Graham*, *Miller*, or *Montgomery*, indicating that the Eighth Amendment prohibits sentencing a juvenile convicted of homicide to a maximum term of life imprisonment if he or she has a meaningful opportunity for release based upon demonstrated maturity and rehabilitation.

In essence, Justice Breyer suggested that juveniles convicted of second-degree murder under an accomplice or co-conspirator theory of liability for murders committed during the course of an enumerated felony are subject to the rule set forth in *Graham*, and not the rule set forth in *Miller*, if they did not join the conspiracy or agree to become an accomplice with the intent to murder the victim. Therefore, according to Justice Breyer, even if a state labels a crime homicide (as Pennsylvania has done with second-degree murder) that does not *ipso facto* permit the imposition of a discretionary LWOP term. Instead, a juvenile must have killed or intended to kill to be eligible for

a discretionary LWOP sentence under **Miller**. **See Miller**, 567 U.S. at 490 (Breyer, J., concurring) ("Given **Graham**'s reasoning, the kinds of homicide that can subject a juvenile offender to [LWOP] must exclude instances where the juvenile himself neither kills nor intends to kill the victim.").

Even assuming *arguendo* Justice Breyer's concurring opinion is a correct statement of the law,[17] Appellant is not entitled to relief in this case. **Graham** makes clear that "[a] State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants . . . some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." **Graham**, 560 U.S. at 75. In other words, consistent with the Eighth Amendment, a state can set a mandatory maximum term of life imprisonment, even for nonhomicide offenses, so long as it grants defendants the opportunity for parole based upon demonstrated maturity and rehabilitation. That is exactly what occurred in this case. Specifically, the trial court made Appellant eligible for parole after 20 years' imprisonment and credited him with over 37 years

---

[17] We note that the Supreme Court of Wyoming has held that Justice Breyer's **Miller** concurrence is not an accurate statement of the law. **See Bear Cloud v. State**, 334 P.3d 132, 146 (Wyo. 2014); **see also Hernandez v. McDonald**, 2015 WL 164707, *8 (C.D. Cal. Jan. 9, 2015) (holding that Justice Breyer's statements in his **Miller** concurrence are not clearly established federal law).

- 15 -

for time served. Thereafter, Appellant was granted parole based upon his demonstrated maturity and rehabilitation.

In reaching its conclusion that juveniles convicted of nonhomicide offenses can be sentenced to life imprisonment, but not LWOP, the Supreme Court of the United States explained that LWOP differs substantially from a life sentence during which a defendant becomes eligible for parole. ***See id.*** at 70, *citing **Solem v. Helm***, 463 U.S. 277, 297 (1983). It concluded that these significant differences meant that different rules should apply for imposing LWOP sentences. Despite its adoption of such principles, the Supreme Court of the United States has never placed mandatory life maximums beyond the authority of a sentencing court to impose, even in nonhomicide cases.

Nothing in Pennsylvania case law indicates that our Supreme Court (or this Court) is prepared to expand Justice Breyer's concurrence and prohibit mandatory life maximums for juveniles who commit second-degree murder but did not kill or intend to kill. The sole reference by our Supreme Court to Justice Breyer's concurrence in ***Miller*** was not an attempt to extend his reasoning to life maximums. As noted above, in ***Commonwealth v. Batts***, 66 A.3d 286 (Pa. 2013), our Supreme Court was presented with a first-degree murder case that did not implicate the concerns expressed by Justice Breyer in his ***Miller*** concurrence. Thus, our Supreme Court stated that

> despite the broad framing of the questions at hand, [Batts] confined his arguments to the context of first-degree murder;

> hence, the issues identified by Justice Breyer in his **Miller** concurrence (discussing additional constitutional concerns connected with the imposition of [LWOP] sentences on juveniles convicted of murder as a result of participation in a felony who have neither killed nor intended to kill), are not implicated in the present matter.

**Id.** at 293-294 (internal citation omitted). Again, Justice Breyer's concurrence speaks only to LWOP sentences – not life maximums which allow for parole eligibility based upon demonstrated maturity and rehabilitation.

In the future, our nation's standards of decency may evolve to the point where sentencing a juvenile convicted of second-degree murder under an accomplice or co-conspirator theory of liability is considered disproportionate and, therefore, cruel and unusual punishment. **Cf. Commonwealth v. Foust**, 2018 WL 9889042018, *4-7 (Pa. Super. Feb. 21, 2018) (setting forth the evolving standards of decency relating to the sentencing of juvenile offenders). Appellant does not cite a single appellate case,[18] and we are unaware of any, which have extended the Eighth Amendment this far. Presently, mandatory life maximums for juveniles convicted of felony murder represent conventional sentencing practices. **E.g.**, Ark. Code Ann. § 5-4-

---

[18] Appellant's only citation to a case which has extended **Miller** in this regard is **Songster v. Beard**, 201 F.Supp.3d 639 (E.D. Pa. 2016). We find **Songster** unavailing. **Songster** does not directly cite to **Graham** a single time. As we have set forth above, **Graham** addresses whether parole boards may make the ultimate determination that an individual has demonstrated the requisite maturity and rehabilitation to deserve release. **See Graham**, 560 U.S. at 75. Hence, we do not agree with **Songster** and hold that it is not binding authority in Pennsylvania. **See Century Indem. Co. v. OneBeacon Ins. Co.**, 173 A.3d 784, 792 n.14 (Pa. Super. 2017) (citation omitted) ("decisions of the . . . federal district courts . . . are not binding on this Court").

104(b); Ga. Code Ann. § 16-5-1(e)(1); Md. Code, Crim. Law, § 2-201(b)(1). Our society deems the taking of a life, either directly or as an accomplice or co-conspirator, sufficiently grievous as to require that the defendant not be entitled to release without first going through the parole process. Accordingly, we hold that the Eighth Amendment permits imposition of section 1102(b)'s mandatory maximum term of life imprisonment for juveniles convicted of second-degree murder, who did not kill or intend to kill. In this case, Appellant was made eligible and received a meaningful opportunity for release as he was paroled after resentencing. Accordingly, his sentence does not constitute cruel and unusual punishment.

In sum, we reaffirm that trial courts must sentence juveniles convicted of second-degree murder prior to June 25, 2012 to a maximum term of life imprisonment under section 1102(b). We hold that such mandatory maximums do not violate the Eighth Amendment's ban on cruel and unusual punishment. As such, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/3/2018

- 18 -