J-S23033-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                   :  PENNSYLVANIA
                                   :
            v.                       :
                                   :
                                 :
KENON SAYLES                    :
                                 :
           Appellant         :  No. 1365 WDA 2018

Appeal from the Judgment of Sentence Entered July 30, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0007659-1993,
CP-02-CR-0015398-1993

BEFORE:   BENDER, P.J.E., NICHOLS, J., and COLINS*, J.

MEMORANDUM BY COLINS, J.:              **FILED JUNE 04, 2019**

Appellant, Kenon Sayles, appeals from the judgment of sentence, imposed upon resentencing for his 1994 conviction for first-degree murder,[1] of a minimum term of 35 years and a maximum term of life imprisonment. We affirm.

The factual and procedural history of this matter are as follows.  On May 7, 1993, Appellant and two other members of the Hood Town gang arrived at a softball game in the Northview Heights neighborhood of Pittsburgh as the game was about to begin.  Appellant and the other Hood Town members approached several members of the rival Original Gangsters, or "OGs", who were in attendance at the game.  A melee ensued on the softball field:  one member of the OGs, James Jarrett, was shot and killed; another member of

---

[1] 18 Pa.C.S. § 2502(a).

* Retired Senior Judge assigned to the Superior Court.

the OGs was shot in the legs and survived; and a third member, Michael Martin, was beaten with a baseball bat and ultimately died of blunt force trauma to the head. Appellant was 17 years old when this incident occurred.

Appellant was charged at docket number CP-02-CR-0007659-1993 ("No. 7659") with criminal homicide and at docket number CP-02-CR-0015398-1993 ("No. 15398") with conspiracy to commit criminal homicide, conspiracy to commit aggravated assault, and possessing instruments of a crime (PIC).[2] Appellant pleaded not guilty, and a non-jury trial was held on November 3, 1994. At the trial, several witnesses testified that they saw Appellant either holding a baseball bat over Martin or actually hitting Michael Martin repeatedly with the bat. Following the trial, the trial court found Appellant guilty of all charges. At No. 7659, the trial court sentenced Appellant to life imprisonment without the possibility of parole on the first-degree murder charge. At No. 15398, the trial court imposed a sentence of a period of 5 to 10 years of incarceration consecutive to the life sentence on the conspiracy counts, which merged for the purposes of sentencing, and a period of 2.5 to 5 years of incarceration on the PIC charge consecutive to the sentence on the conspiracy charge. Appellant appealed, and this Court affirmed the judgment of sentence on May 10, 1996.

_____

[2] 18 Pa.C.S. §§ 2501, 903(a)(1), and 907(a), respectively.

Appellant filed petitions under the Post Conviction Relief Act (PCRA)[3] in 2001, 2005, and 2006, each of which was dismissed as untimely. On June 25, 2012, the United States Supreme Court decided *Miller v. Alabama*, 567 U.S. 460 (2012), holding that mandatory life-without-parole sentences for individuals under the age of 18 at the time of the offense violates the Eighth Amendment prohibition on cruel and unusual punishment because those mandatory sentences do not allow for the consideration of the particularized circumstances of the juvenile offenders. *Id.* at 479-80. The Court in *Miller* additionally set forth various factors that a court must consider when imposing a life-without-parole sentence on a juvenile offender including the "hallmark features" of youth, such as "immaturity, impetuosity, and failure to appreciate risks and consequences." *Id.* at 476-78.[4]

Appellant filed a fourth PCRA petition on July 13, 2012, arguing that his mandatory sentence of life without parole was unconstitutional as a result of

---

[3] 42 Pa.C.S. §§ 9541–9546.

[4] Our Supreme Court restated the *Miller* factors as follows:

> [A]t a minimum [the sentencing court] should consider a juvenile's age at the time of the offense, his diminished culpability and capacity for change, the circumstances of the crime, the extent of his participation in the crime, his family, home and neighborhood environment, his emotional maturity and development, the extent that familial and/or peer pressure may have affected him, his past exposure to violence, his drug and alcohol history, his ability to deal with the police, his capacity to assist his attorney, his mental health history, and his potential for rehabilitation.

*Commonwealth v. Batts*, 66 A.3d 286, 297 (Pa. 2013) (quoting *Commonwealth v. Knox*, 50 A.3d 732, 745 (Pa. Super. 2012)).

- 3 -

***Miller***. Appellant's fourth PCRA petition was denied on February 12, 2014 pursuant to ***Commonwealth v. Cunningham***, 81 A.3d 1 (Pa. 2013), holding that ***Miller*** did not apply retroactively, and this Court affirmed.

In January 2016, the U.S. Supreme Court ruled in ***Montgomery v. Louisiana***, 136 S.Ct. 718 (2016), that the prohibition on mandatory life-without-parole sentences of ***Miller*** was a substantive rule that was retroactive in state cases on collateral review. ***Id.*** at 736. Appellant filed a fifth PCRA petition on March 10, 2016 as a result of ***Montgomery***. On February 22, 2017, the PCRA court issued an order requiring that Appellant be resentenced consistent with ***Miller*** and ***Montgomery***.

Appellant's resentencing hearing took place on July 23 and 30, 2018. At the conclusion of the hearing, the sentencing court sentenced Appellant to a sentence of 35 years to life imprisonment on the first-degree murder charge with credit for time served. Sentencing Order, No. 7659, 7/30/18; N.T., 7/30/18, at 99. Separately, the sentencing court sentenced Appellant to 10 to 20 years of confinement on the first conspiracy count to run concurrently with the 35-years-to-life sentence and no further punishment on the other conspiracy count or the PIC charge. Sentencing Order, No. 15398, 7/30/18; N.T., 7/30/18, at 99. Appellant was given credit for time served from November 3, 1994 on both sentences. Sentencing Order, No. 7659, 7/30/18; Sentencing Order, No. 15398, 7/30/18.

Appellant filed a post-sentence motion, which the sentencing court denied. Appellant thereafter filed a timely notice of appeal.[5]

On appeal, Appellant raises two issues:

I. Did the sentencing court commit legal error when it entered a sentence with a maximum sentence of life imprisonment?

II. Did the sentencing court abuse its discretion by sentencing the Appellant to a sentence of thirty-five (35) years to life?

Appellant's Brief at 4 (suggested answers omitted).

Before we reach the merits of these appellate issues, we must first address the question of whether this appeal must be quashed pursuant to **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), because Appellant filed a single notice of appeal for more than one underlying matter. In this case, Appellant's notice of appeal listed the docket numbers for both the matter in which he was convicted of first-degree murder, No. 7659, and the other matter stemming from the same incident in which he was convicted of two counts of conspiracy and one count of PIC, No. 15398. On October 16, 2018, this Court issued a rule directing Appellant to show cause why his appeal should not be quashed in light of **Walker**. Appellant filed a response stating that this appeal was distinct from the rule espoused in **Walker** because, while he listed both docket numbers on his notice of appeal, Appellant in fact is only appealing the order in the No. 7659 matter in which he was resentenced to

---

[5] Appellant filed his statement of errors complained of on appeal on November 28, 2018, and the sentencing court entered its opinion on December 28, 2018.

incarceration for 35 years to life for first-degree murder.  On November 5, 2018, this Court entered an order discharging the rule, but stating that the merits panel may revisit the issue of whether Appellant's notice of appeal ran afoul of **Walker**.

We agree with Appellant that this appeal does not violate **Walker**.  In **Walker**, the Commonwealth filed a single notice of appeal from an order that disposed of four motions to suppress filed by four separate defendants at four docket numbers.  **Id.** at 971.  The Court noted that the Pennsylvania appellate courts had on numerous instances addressed whether a single notice of appeal was filed to challenge multiple appealable orders and, while recognizing that this practice was disfavored, declined to quash the appeals on this basis.  **Id.** at 974-75.  The Court observed, however, that the Official Note to Rule of Appellate Procedure 341 had been amended in 2013 and now provides: "Where…one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed."  **Id.** at 976 (quoting Pa.R.A.P. 341, Official Note).  The Court determined that this added language to the Official Note to Rule 341 establishes "a bright-line mandatory instruction to practitioners" that "when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed."  **Id.** at 976-77.  The Court held that the failure to comply with this rule requires the quashal of an appeal, but stated that this rule would apply prospectively only.  **Id.** at 977.  In **Commonwealth v. Williams**, ____ A.3d ____, 2019 PA Super 81 (filed March 20, 2019), this Court applied **Walker**

to quash an appeal where an appellant filed a single notice of appeal listing four docket numbers from an order denying a PCRA petition related to the appellant's 2012 conviction after a jury trial for four separate cases.  **Id.** at *1, *4.

In this matter, the sentencing court filed separate sentencing orders on July 30, 2018 in the No. 7659 and No. 15398 matters, and Appellant filed a single notice of appeal listing both docket numbers.  Appellant's notice of appeal was filed on September 20, 2018, after the June 1, 2018 filing date of **Walker**, and therefore **Walker** governs.  **Id.** at *3-*4.  However, while Appellant identified both docket numbers on the notice of appeal, Appellant's appeal solely relates to the 35-years-to-life sentence in the No. 7659 matter. Appellant did not identify any issues related to the 10-to-20 year sentence in the No. 15398 matter in his post-sentence motion, statement of errors complained of on appeal or in his appellate briefs.  Furthermore, the sentencing court directed that Appellant's 10-to-20 year sentence in the No. 15398 matter began to run on November 3, 1994, and therefore he completed the maximum term of imprisonment at this docket number in 2014.  Any appeal of the sentence imposed upon resentencing in the No. 15398 matter would therefore be moot.  **See Commonwealth v. King**, 786 A.2d 993, 996 (Pa. Super. 2001) (challenge to sentence was moot where the sentence had expired and there were no criminal or civil consequences associated with the expired sentence).  Accordingly, we conclude that **Walker** is inapplicable here.

In his first issue, Appellant argues that the maximum sentence of life imprisonment imposed by the sentencing court was an illegal sentence.[6] Appellant asserts that the sentencing court erred in concluding that it was required to impose a maximum sentence of life imprisonment for a juvenile resentenced on a first-degree murder charge. **See** Sentencing Court Opinion, 12/27/18, at 5-6. Appellant therefore argues that this mistaken application of a maximum sentence of life imprisonment without any explanation of the reasons violates **Miller** and **Montgomery** because it imposes a mandatory life sentence on a juvenile offender without considering the offender's particular circumstances.

"When reviewing the legality of a sentence, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Seskey**, 170

---

[6] The Commonwealth claims that Appellant's argument concerning the sentencing court's imposition of a maximum term of life imprisonment "seems to be more of a challenge to discretionary aspects of sentencing." Commonwealth's Brief at 18. The Commonwealth argues that because Appellant did not discuss whether this issue raises a substantial question under the Sentencing Code or norms of sentencing in his brief pursuant to Rule of Appellate Procedure 2119(f), this discretionary aspect of sentencing claim is waived. **Id.** at 19-20. While we agree with the Commonwealth that Appellant did not discuss this argument in the Rule 2119(f) section of his brief, it is apparent that Appellant's challenge to the mandatory maximum sentence of life imprisonment is at heart a challenge to the constitutionality of such a sentence, and therefore is an argument that the sentence was illegal. **See Commonwealth v. Monarch**, 200 A.3d 51, 56 (Pa. 2019) (argument that a sentence is unconstitutional implicates the legality of the sentence); **Commonwealth v. Blount**, ___ A.3d ___, 2019 PA Super 108, *20 (filed April 8, 2019) (argument that application of mandatory maximum term of life imprisonment to juvenile offenders is unconstitutional presents a challenge to the legality of the sentence).

- 8 -

A.3d 1105, 1107 (Pa. Super. 2017). Where a sentence is found to be illegal, it must be vacated. **Commonwealth v. Rivera**, 95 A.3d 913, 915 (Pa. Super. 2014).

The decisions of our Supreme Court and this Court make clear that the sentencing court was required to impose a mandatory maximum sentence of life imprisonment upon Appellant. In **Commonwealth v. Batts**, 66 A.3d 286 (Pa. 2013) (**Batts I**), our Supreme Court analyzed Section 1102(a) of the Crimes Code, 18 Pa.C.S. § 1102(a), which required that all juveniles and adults convicted of first-degree murder receive a sentence of life without parole,[7] and Section 6137(a)(1) of the Prisons and Parole Code, 61 Pa.C.S. § 6137(a)(1), which prohibits the parole of an inmate serving a life sentence, concluding that the interplay between these two statutes with respect to juvenile offenders was rendered unconstitutional by **Miller**. **Batts I**, 66 A.3d at 295-96. Nevertheless, the Court in **Batts I** recognized that, as to juvenile offenders convicted prior to **Miller** and resentenced as a result of that decision, "it is our determination here that they are subject to a mandatory maximum sentence of life imprisonment as required by Section 1102(a), accompanied by a minimum sentenced determined by the common pleas court upon resentencing." **Id.** at 297.

---

[7] Section 1102(a) was amended in the wake of **Miller** to make clear that it no longer applied to juvenile offenders, and Section 1102.1 was added to the Crimes Code, 18 Pa.C.S. § 1102.1, establishing a sentencing structure for juvenile offenders who are convicted of first- and second-degree murder after the date **Miller** was decided.

In a later opinion in the same case, ***Commonwealth v. Batts***, 163 A.3d 410 (Pa. 2017) (***Batts II***), and in ***Commonwealth v. Machicote***, ___ A.3d ___, No. 14 WAP 2018 (Pa. filed April 26, 2019), the Court reaffirmed the holding of ***Batts I*** that the entire statutory scheme pertaining to juvenile offenders was not unconstitutional as a result of ***Miller*** and that the mandatory maximum of life imprisonment under Section 1102 remains in effect. ***Batts II***, 163 A.3d at 421, 444-45; ***Machicote***, slip op. at 7. Additionally, in ***Seskey***, this Court held that a 13-to-26 term-of-years sentence imposed on a juvenile offender upon resentencing pursuant to ***Montgomery*** was illegal under ***Batts I*** and ***Batts II*** and remanded for the imposition of a sentence with a maximum term of life imprisonment. 170 A.3d at 1107-09; ***see also Commonwealth v. Blount***, ___ A.3d ___, 2019 PA Super 108, *20-*21 (filed April 8, 2019) (rejecting challenge to maximum sentence of life imprisonment brought by juvenile offender resentenced pursuant to ***Montgomery*** for two counts of first-degree murder); ***Commonwealth v. Ligon***, ___ A.3d ___, 2019 PA Super 96, *6 (filed March 28, 2019) (maximum life sentence was mandatory at resentencing for juvenile offender convicted of two counts of first-degree murder); ***Commonwealth v. Olds***, 192 A.3d 1188, 1193-95 (Pa. Super. 2018) (mandatory maximum of life imprisonment requirement also applies to the resentencing of juvenile offenders convicted prior to ***Miller*** of second-degree murder under 18 Pa.C.S. § 1102(b)).

Furthermore, the mandatory maximum life sentence imposed upon Appellant does not violate the holding of **Miller** mandating individualized sentencing with consideration of the particularized circumstances of the juvenile offender. We addressed this precise issue in **Ligon**. In that case, the juvenile offender was resentenced on two first-degree murder charges to concurrent 35-years-to-life sentences, and he appealed claiming that the mandatory lifetime parole tail was unconstitutional. 2019 PA Super 96, *2-*3. We noted that **Miller** did not hold that maximum sentences of life imprisonment with parole eligibility imposed on juvenile offenders are unconstitutional, but instead only mandated that an offender obtain some meaningful opportunity for release. **Id.** at *7; **see also Olds**, 192 A.3d at 1196. We held that the 35-years-to-life sentence imposed in **Ligon** complied with **Miller** because the offender was offered a meaningful opportunity for release as determined by the Board of Probation and Parole. 2019 PA Super 96, *7; **see also Blount**, 2019 PA Super 108, *21-*22 (rejecting claim that a mandatory maximum life sentence violates the **Miller** mandate of individualized sentencing of juvenile offenders); **Olds**, 192 A.3d at 1197-98 (mandatory maximum life sentence imposed upon a juvenile offender convicted of second-degree murder does not violate the Eighth Amendment requirement of individualized sentencing for juvenile offenders even where the offender did not kill or intend to kill). In this matter, Appellant will be eligible for parole upon the completion of his minimum sentence of 35 years of incarceration with credit for time served since the date of his conviction in

1994. Therefore, Appellant will have a meaningful opportunity for release based on a determination by the Board of Probation and Parole of his demonstrated maturity and rehabilitation.

In his second issue, Appellant challenges the discretionary aspect of his sentence as it relates to the minimum term of 35 years imposed at resentencing. The right to appellate review of the discretionary aspect of a sentence is not absolute, and an appellant must satisfy a four-part test to invoke this Court's jurisdiction. *Commonwealth v. Nevels*, 203 A.3d 229, 246 (Pa. Super. 2019). This four-part test requires us to determine whether:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of appeal pursuant to [Rule of Appellate Procedure] 2119(f); and (4) the appellant raises a substantial question for our review.

*Id.* A substantial question is present where the appellant advances a plausible argument that the sentence was inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms of the sentencing process. *Id.*

In this matter, Appellant complied with the first three parts of this test when he filed a post-sentence motion raising the issues presented on appeal, filed a timely notice of appeal, and included a Rule 2119(f) statement in his brief. We thus must determine whether Appellant's appeal presents a substantial question. Appellant argues that the sentencing court failed to consider the *Miller* age-related factors on the record and that the sentencing

- 12 -

court also failed to consider evidence of Appellant's rehabilitation since he has been incarcerated. Furthermore, Appellant contends that the sentencing court impermissibly relied on the impressions of the judge who imposed Appellant's original sentence. We conclude that Appellant has presented a substantial question, and we therefore proceed to address the merits of the issue. *See Commonwealth v. Caldwell*, 117 A.3d 763, 769-70 (Pa. Super. 2015) (*en banc*) (excessive sentence claim, in conjunction with an assertion that the court failed to consider mitigating factors, raises a substantial question); *see also Commonwealth v. Hicks*, 151 A.3d 216, 227 (Pa. Super. 2016) (claim that sentencing court failed to set forth adequate reasons for the sentence imposed raises a substantial question).

Our standard of review for challenges to the discretionary aspects of sentencing is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Conte*, 198 A.3d 1169, 1176 (Pa. Super. 2018) (citation omitted).

Initially, we observe that our Supreme Court has not required that every court resentencing a juvenile offender pursuant to *Miller* and *Montgomery*

consider the *Miller* factors. In *Batts II*, our Supreme Court set forth two distinct resentencing procedures for juvenile offenders who were convicted of their offenses prior to the date *Miller* was decided. First, the Supreme Court explained that in cases where the Commonwealth seeks a sentence of life-without-parole upon resentencing, the Commonwealth must provide reasonable notice to the offender and then must establish beyond a reasonable doubt that the offender "exhibits such irretrievable depravity that rehabilitation is impossible." *Batts II*, 163 A.3d at 455 (emphasis omitted) (quoting *Montgomery*, 136 S.Ct. at 733). When determining whether a life-without-parole sentence is appropriate, the sentencing court must consider each of the youth-related factors of *Miller* in conjunction with the similar mitigating factors set forth in Section 1102.1(d), 18 Pa.C.S. § 1102.1(d), the sentencing statute enacted in the wake of *Miller* for juvenile offenders who are convicted of first- and second-degree murder applicable to juvenile offenders convicted on or after the date *Miller* was decided. *Batts II*, 163 A.3d at 455 & n.23.

In cases where the Commonwealth does not seek a life-without-parole sentence upon resentencing of a juvenile offender, the Court in *Batts II* held that the sentencing court should apply the traditional sentencing considerations of Section 9721(b) of the Sentencing Code, 42 Pa.C.S. § 9721(b). *Batts II*, 163 A.3d at 460. In addition, the Court stated that sentencing courts should use, "as guidance," the minimum terms of incarceration set forth in Section 1102.1(a) applicable to juvenile offenders

convicted after ***Miller***. ***Id.*** at 460; ***see also Machicote***, slip op. at 15-16 (holding that a sentencing court must consider the Miller factors on the record when resentencing a juvenile offender if the offender is statutorily eligible for a life sentence and the Commonwealth asks for a life-without-parole sentence). Because the Commonwealth did not seek a life-without-parole sentence here, Appellant's case falls into this latter category described in ***Batts II***. The sentencing court was therefore required to consider the Section 9721(b) sentencing factors, which are "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). In addition, the sentencing court was required to seek guidance from the minimum sentences of Section 1102.1(a) applicable to post-***Miller*** convictions of juvenile offenders; for a defendant, like Appellant, who is convicted of first-degree murder and at least 15 but no more than 18 years old at the time of the crime, Section 1102.1(a) calls for a minimum sentence of 35 years. 18 Pa.C.S. § 1102.1(a)(1). Pursuant to ***Batts II***, however, the sentencing court was not required to consider the ***Miller*** or Section 1102.1(d) factors on the record in this case.

At the sentencing hearing, Appellant presented the testimony and report of a clinical forensic psychologist, Dr. Shannon Edwards. Dr. Edwards described Appellant's difficult childhood, in which he was exposed to abusive behavior and drugs and not consistently provided with clothing and food. N.T., 7/23/18, at 20-21, 25-26. Dr. Edwards further testified that Appellant had

multiple misconducts between 1994 and 2004 for fights, threats and contraband and these misconducts declined after 2004 with none after 2008. *Id.* at 28-29. Dr. Edwards stated that this decline demonstrated Appellant's increased maturity over the last 10 to 15 years of his incarceration, which is also evidenced by his receipt of his GED, HVAC certificates, participation in culinary programs, and regular visits with a therapist while in prison. *Id.* at 29-31. Based on an assessment of risk factors, Dr. Edwards opined that Appellant presented a medium risk to the community, with the potential for the risk to be lowered based upon the presence of proper resources and therapeutic services after Appellant's release. *Id.* at 15-16.

Appellant also presented the testimony of Tracy Morman, the longtime girlfriend of Appellant's older brother who had known Appellant since he was 11 years old. Ms. Morman testified that Appellant had difficult, unstable teenage years, growing up in a high crime part of Pittsburgh with a large gang presence, having been evicted from multiple houses, utilities being cut off, and often having to go without food. *Id.* at 58-62. Ms. Morman, who still speaks with Appellant weekly by telephone, stated that Appellant had matured and was solely interested in becoming a cook and opening his own restaurant upon release. *Id.* at 57, 62-64. A letter from Appellant's elder sister was read out at the sentencing hearing, in which she stated that she had worked in management positions at several restaurants and would be able to help him obtain a job in a restaurant in the Columbus, Ohio area upon his release. *Id.* at 65-66. In addition, the mother and sister of James Jarrett, the individual

who was shot to death at the May 7, 1993 incident at the softball field in Northview Heights, testified regarding the impact Mr. Jarrett's murder had on them. *Id.* at 67-73.

Prior to imposing Appellant's sentence, the sentencing court stated that it had carefully considered the evidence and argument presented in making its determination. *Id.* at 98-99. The sentencing court asked various questions during counsels' arguments, regarding the nature of the crimes for which Appellant was convicted, Appellant's age and maturity level at the time of the criminal act, and his rehabilitation since he entered into the custody of the Department of Corrections. *Id.* at 81-95. In its Rule 1925(a) opinion, the sentencing court further explained its sentence as follows:

> While [the sentencing court] did consider the evidence presented regarding the defendant's mental state, upbringing, potential for rehabilitation and all of the other mitigating factors established in the defense presentation of evidence, it also considered the nature of the offense, the defendant's primary role in bringing about the death of the victim, his prior involvement in the juvenile justice system, his possession of a firearm when arrested and his record of less than sterling conduct while incarcerated. In weighing all of that, the Court concluded that all of the factors considered weighed neither towards a lesser sentence than the one provided for in [Section 1102.1(a)(1)] nor towards a greater sentence.

Sentencing Court Opinion, 12/27/18, at 7.

The sentencing court thus demonstrated that it applied the relevant sentencing criteria of Section 9721(a), properly followed the instruction in *Batts II* to be guided by the mandatory minimum sentences of Section 1102.1 when resentencing juvenile offenders pursuant to *Montgomery*, and

also gave due consideration to Appellant's age and maturity at the time of the offense. To the extent that Appellant argues that the sentencing court gave particular weight to one sentencing factor over another, the weighing of the sentencing factors is exclusively reserved to the judge imposing the sentence, and an appellate court may not substitute its own weighing of the factors. *Commonwealth v. Bricker*, 41 A.3d 872, 876 (Pa. Super. 2012). Accordingly, Appellant has not demonstrated that the sentencing court misapplied or ignored the law, exercised its judgment impartially or with prejudice, bias or ill will, or that the sentence imposed was manifestly unreasonable. *Conte*, 198 A.3d at 1176.

Finally, we reject Appellant's contention that the sentencing court impermissibly relied on the impressions of the Honorable Robert E. Dauer, the judge who handed down the original sentence in Appellant's case. At the sentencing hearing, the sentencing court stated:

> Someone said once hindsight is better than foresight, and I'm perplexed because I'm not sure that's correct here.
>
> For many, many years I had a great deal of respect for the Honorable Robert E. Dauer, Administrative Judge, many, many times President Judge of this court, who as far as I was concerned was a mentor and a guide in doing things such as this as handing down sentences. And at first blush it seemed to me any sentence handed down by Robert Dauer was a correct sentence not necessarily because he followed a particular pattern of law but because he was able to view this with such aplomb and such dignity and such appropriateness that's impossible to measure.

N.T., 7/30/18, at 98. In its opinion, the sentencing court stated that it:

did [not] give undue weight to the sentence imposed by the original sentencing judge or any comments or observations made by that Court. The sentence imposed was solely a product of this Court's proper and careful consideration of all of the factors provided for in statute and case precedent as guidance for [fashioning] sentences.

Sentencing Court Opinion, 12/27/18, at 7.

We conclude that the sentencing court's comments at the sentencing hearing do not demonstrate an unreasonable deference to the sentence that Judge Dauer imposed on Appellant, but rather the sentencing court's respect for Judge Dauer generally and specifically in the matter of imposing sentences. Any supposed reliance on Judge Dauer's sentence is further belied by the fact that the sentencing court here gave a sentence, consistent with Section 1102.1(a)(1), of 35 years to life to run concurrently with the 10-to-20 year sentence on the first conspiracy count. Appellant's new sentence is far less severe than the originally imposed life-without-parole sentence for the first-degree murder charge followed by a consecutive term-of-years sentence of 7.5 to 15 years on the conspiracy and PIC charges, offering Appellant a meaningful opportunity for release from prison as provided for in **Miller** and **Montgomery**.

Based on the foregoing, Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/4/2019