J-S48029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MICHAEL TWIGGS :
:
Appellant : No. 3309 EDA 2018

Appeal from the PCRA Order Entered October 22, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-1017181-1975

BEFORE:   BOWES, J., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SHOGAN, J.:                **FILED DECEMBER 12, 2019**

Appellant, Michael Twiggs, appeals from the order denying his petition

filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-

9546.  We affirm.

On March 31, 1976, a jury convicted Appellant of first-degree murder.

The conviction stemmed from an incident on September 30, 1975, during

which Appellant shot Christopher Ross with a sawed-off shotgun.  Appellant

was seventeen years old at the time of the crime.  On February 7, 1977, the

trial court denied Appellant's post-verdict motions and sentenced him to serve

a mandatory term of life imprisonment.  On July 6, 1979, our Supreme Court

affirmed the judgment of sentence.  ***Commonwealth v. Twiggs***, 402 A.2d

_____

[*]  Retired Senior Judge assigned to the Superior Court.

1374 (Pa. 1979). Thereafter, Appellant filed seven petitions seeking post-conviction relief, all of which proved to be unfruitful. On July 16, 2010, Appellant filed another PCRA petition. While the PCRA petition was pending, the United States Supreme Court issued its decision in **Miller v. Alabama**, 567 U.S. 460 (2012). The PCRA court set forth the remaining procedural history of this matter as follows:

On July 24, 2012, Appellant filed an amended PCRA petition, seeking resentencing pursuant to **Miller**. On March 4, 2016, Appellant filed an amended PCRA petition, raising a **Montgomery** [**v. Louisiana**, 136 S.Ct. 718 (2016)] claim. The Appellant entered into negotiations with the Commonwealth[,] which concluded when the Appellant agreed to accept the Commonwealth's recommended sentence of thirty-five years to life. The Appellant's decision to accept the recommended sentence resulted in a negotiated resentencing, which occurred on November 30, 2016. N.T. 11/30/2016. Before the Appellant's original sentence was vacated, this Court conducted a colloquy of the Appellant which, inter alia, advised the Appellant that he was not required to accept the sentence the Commonwealth was recommending to the Court, advised him of his absolute right to have a resentencing hearing before a judge, and advised that if he accepted the Commonwealth's recommended sentence he gave up the right to a resentencing hearing. **Id**. at 9-10. The Appellant stated he understood his right to a resentencing hearing and wanted to accept the recommended sentence and proceed with a negotiated resentencing. **Id**.

Further, the Appellant was advised that if he agreed to accept the sentence offered by the Commonwealth his appellate rights would be extremely limited to challenging the jurisdiction of the Court, the legality of the sentence imposed, and the voluntariness of his decision to accept the recommended sentence. **Id**. at 10-11. The Appellant stated that he understood his appeal rights. **Id**. at 12. At the conclusion of the colloquy, this Court found that the Appellant's decision, to accept the recommended sentence, was made voluntarily, knowingly, and of his own free will. **Id**. at 14. The original sentence imposed on February 7, 1977, was vacated and a new sentence of thirty-five

- 2 -

years to life was imposed for the conviction of first degree murder. *Id*. at 44. The Appellant received credit for all original credit time awarded and all time previously served in this case. *Id*. at 45. At the time of the resentencing, the Appellant had served forty-one years of his original sentence. The newly imposed sentence of thirty-five years to life made the Appellant immediately eligible for parole consideration. *Id*. The Appellant was subsequently granted parole by the state of Pennsylvania and was released from prison.

On April 15, 2017, the Appellant filed a *pro se* PCRA petition, asserting that his new sentence was illegal. James F. Berardinelli, Esquire, was appointed counsel for the Appellant, and on March 31, 2018, counsel filed the "Defendant's Amended Post-Conviction Relief Act Petition" ("Amended Petition"). In the Amended Petition, counsel raised four claims concerning the illegality of the Appellant's sentence of thirty-five years to life: (1) that his sentence violated the holding of **Miller** and **Montgomery**; (2) that the imposition of a maximum term of life violates the constitutional mandate of proportionality; (3) that the imposition of the maximum term of life violated the requirement of meaningful release based on demonstrated maturity; and (4) that no statutory sentencing scheme exists which authorizes the imposition of the sentence of thirty-five years to life.

On September 6, 2018, the Commonwealth filed a "Response to Petition for Post-Conviction Relief" ("Commonwealth Response"). The Commonwealth agreed that the imposition of a mandatory maximum term of life was illegal in the Appellant's case. Commonwealth Response, p. 1. The Commonwealth asserted that "where defendants have demonstrated that they have been rehabilitated or that they have the capability of being rehabilitated, the mandatory imposition of continued, lifetime punishment is disproportionate, and violates the requirements of individualized sentencing set forth in **Miller**." Commonwealth Response, p. 3. However, the Commonwealth acknowledged that the Pennsylvania Superior Court has ruled otherwise, and admitted that, based on the current applicable law, the Court had no alternatives but to deny the Appellant's PCRA Petition. Commonwealth Response, p. 1.

PCRA Court Opinion, 1/15/19, at 2-5.

On September 24, 2018, the PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss. Appellant did not respond, and on October 22, 2018, the PCRA court entered an order dismissing Appellant's PCRA petition. This timely appeal followed. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

I. Did the lower court err in denying defendant's PCRA petition on the ground that the imposition of a maximum sentence of life imprisonment is unconstitutional in light to the United States Supreme Court's holdings in *Miller v. Alabama*, 567 U.S. 460 (2012) and *Montgomery v. Louisiana*, __ U.S. __, 136 S.Ct. 718 (2016)?

II. Did the lower court err in denying defendant's PCRA petition on the ground that the imposition of a maximum sentence of life imprisonment violates the constitutional mandate of proportionality?

III. Did the lower court err in denying defendant's PCRA petition on the ground that the imposition of a maximum sentence of life imprisonment is unconstitutional since it deprives him of a meaningful opportunity for release and to be free of supervision based upon demonstrated maturity?

IV. Did the lower court err in denying defendant's PCRA petition on the ground that the imposition of a maximum sentence of life imprisonment is unconstitutional since defendant can be sentenced to no more than 20-40 years for third degree murder since the only existing sentencing scheme in Pennsylvania for juveniles convicted prior to 2012 of first or second-degree murder has been invalidated?

Appellant's Brief at 3.

When reviewing the propriety of an order denying PCRA relief, we consider the record "in the light most favorable to the prevailing party at the

PCRA level." ***Commonwealth v. Stultz***, 114 A.3d 865, 872 (Pa. Super. 2015) (quoting ***Commonwealth v. Henkel***, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*)). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. ***Commonwealth v. Rykard***, 55 A.3d 1177, 1183 (Pa. Super. 2012). We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. ***Commonwealth v. Rigg***, 84 A.3d 1080, 1084 (Pa. Super. 2014). Moreover, "When reviewing the legality of a sentence, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Seskey***, 170 A.3d 1105, 1107 (Pa. Super. 2017) (citation omitted).

We have reviewed the briefs of the parties, the relevant law, the certified record before us on appeal, and the PCRA court opinion filed on January 15, 2019. It is our conclusion that the PCRA court's opinion adequately and accurately addresses each of the challenges to the legality of his sentence presented by Appellant and properly concluded that each lacks merit. PCRA Court Opinion, 1/15/19, at 8-23. Consequently, Appellant's contrary arguments fail.[1] Accordingly, we affirm on the basis of the PCRA court's

_____

[1] We conclude that Appellant's challenges to the legality of his sentence were resolved by our Supreme Court in ***Commonwealth v. Batts***, 163 A.3d 410 (Pa. 2017) ("***Batts II***"). Since ***Batts II***, this Court has repeatedly rejected

- 5 -

opinion and adopt its analysis as our own.[2]

Order affirmed.

_____

the claim that the imposition of a mandatory maximum sentence of life imprisonment for a juvenile convicted of first or second-degree murder is illegal. **See Commonwealth v. Olds**, 192 A.3d 1188, 1197-1198 (Pa. Super. 2018) (holding imposition of mandatory maximum term of life imprisonment for juvenile defendant convicted of second-degree murder prior to **Miller** was constitutional), *appeal denied*, 199 A.3d 334 (Pa. 2018); **Seskey**, 170 A.3d at 1109 (holding trial court imposed an illegal sentence when it resentenced juvenile defendant convicted of first-degree murder prior to **Miller** to term of 13 to 26 years of imprisonment; court was required to impose mandatory maximum sentence of life imprisonment); **Commonwealth v. Battles**, 169 A.3d 1086, 1089-1090 (Pa. Super. 2017) (holding trial court's imposition of mandatory maximum term of life imprisonment upon resentencing of juvenile defendant convicted of first-degree murder prior to **Miller** was legal).

Nevertheless, Appellant and the Commonwealth have essentially urged this Court to reconsider our holdings in **Olds** and **Seskey**. However, we must follow the decisional law established by our own Court. **Blumenstock v. Gibson**, 811 A.2d 1029, 1039 (Pa. Super. 2002). Moreover, we observe that, following our decision in **Olds**, the Pennsylvania Supreme Court denied a subsequently filed petition for allowance of appeal. **Commonwealth v. Olds**, 199 A.3d 334 (Pa. 2018). Therefore, unless or until **Olds** and **Seskey** are overturned by an *en banc* panel of this Court, or by a decision of the Pennsylvania Supreme Court, they continue to be viable precedent for this Court and for the courts of common pleas. **See also Sorber v. American Motorists Ins. Co.**, 680 A.2d 881, 882 (Pa. Super. 1996) (holding that, even though petition for allowance of appeal was pending before the Pennsylvania Supreme Court, decision remains binding precedent as long as the decision has not been overturned by our Supreme Court). Hence, we cannot grant Appellant and the Commonwealth the relief sought.

We note further that, to the extent Appellant and the Commonwealth rely upon **Songster v. Beard**, 201 F.Supp.3d 639 (E.D.Pa. 2016) for support of their argument, in **Olds** we expressly rejected an appellant's reliance on **Songster**. **See Olds**, 192 A.3d at 1197 n.18 ("[W]e do not agree with **Songster** and hold that it is not binding authority in Pennsylvania.").

[2] The parties are directed to attach a copy of that opinion in the event of further proceedings in this matter.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/12/19

FILED

2019 JAN 15 AM 9: 29

OFFICE OF JUDICIAL RECORDS
CRIMINAL DIVISION
FIRST JUDICIAL DISTRICT
OF PENNSYLVANIA


# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA
## CRIMINAL TRIAL DIVISION

| COMMONWEALTH | : | |
| (Appellee) | : | CP-51-CR-1017181-1975 |
| VS. | : | |
| | : | SUPERIOR COURT |
| MICHAEL TWIGGS | : | No. 3309 EDA 2018 |
| (Appellant) | : | |

## OPINION

**By: The Honorable Kathryn S. Lewis, Senior Judge**

The Appellant appeals his sentence of thirty-five years to life, which was the result of a negotiated resentencing pursuant to Miller v. Alabama, 567 U.S. 460, (2012), and Montgomery v. Louisiana, 136 S.Ct. 718 (2016). The Appellant asserts that the maximum sentence of life is unconstitutional under the United States Constitution and the Pennsylvania Constitution. In this case, the holdings of the United States Supreme Court in Miller and Montgomery do not prohibit a defendant convicted of first or second degree murder, for a crime committed as a juvenile, from receiving a maximum sentence of life as long as the sentence sets a minimum term of years which affords the defendant time outside of prison walls. Supra. Therefore, the Appellant's sentence is constitutional and should be affirmed.

## STATEMENT OF FACTS/PROCEDURAL HISTORY

The Appellant was born on March 2, 1958. On September 30, 1975, the Appellant shot and killed Christopher Ross. The two had previously fought over Dede Thorpe, who both considered their girlfriend. On the day of the shooting, Mr. Ross was walking with Ms. Thorpe and others, when the Appellant appeared from a vacant house and called them over. After a short conversation, the Appellant pulled out a sawed-off shotgun, and pulled the trigger twice, but the gun misfired. The third time that the Appellant pulled the trigger, the gun went off, wounding Mr. Ross in the stomach. Mr. Ross died three days later. At the time of the killing, the Appellant was 17 years and 6 months old.

The Appellant was convicted of first degree murder on March 31, 1976. On February 7, 1977, he was sentenced to life imprisonment without the possibility of parole on the charge of first degree murder.

On July 24, 2012, Appellant filed an amended PCRA petition, seeking resentencing pursuant to <u>Miller</u>. On March 4, 2016, Appellant filed an amended PCRA petition, raising a <u>Montgomery</u> claim. The Appellant entered into negotiations with the Commonwealth which concluded when the Appellant agreed to accept the Commonwealth's recommended sentence of thirty-five years to life. The Appellant's decision to accept the recommended sentence resulted in a negotiated resentencing, which occurred on November 30, 2016. N.T. 11/30/2016.

2

Before the Appellant's original sentence was vacated, this Court conducted a colloquy of the Appellant which, inter alia, advised the Appellant that he was not required to accept the sentence the Commonwealth was recommending to the Court, advised him of his absolute right to have a resentencing hearing before a judge, and advised that if he accepted the Commonwealth's recommended sentence he gave up the right to a resentencing hearing. Id. at 9-10. The Appellant stated he understood his right to a resentencing hearing and wanted to accept the recommended sentence and proceed with a negotiated resentencing. Id.

Further, the Appellant was advised that if he agreed to accept the sentence offered by the Commonwealth his appellate rights would be extremely limited to challenging the jurisdiction of the Court, the legality of the sentence imposed, and the voluntariness of his decision to accept the recommended sentence. Id. at 10-11. The Appellant stated that he understood his appeal rights. Id. at 12. At the conclusion of the colloquy, this Court found that the Appellant's decision, to accept the recommended sentence, was made voluntarily, knowingly, and of his own free will. Id. at 14. The original sentence imposed on February 7, 1977, was vacated and a new sentence of thirty-five years to life was imposed for the conviction of first degree murder. Id. at 44. The Appellant received credit for all original credit time awarded and all time previously served in this case. Id. at 45. At the time of the resentencing, the Appellant had served forty-one years of his original sentence. The

3

newly imposed sentence of thirty-five years to life made the Appellant immediately eligible for parole consideration. Id. The Appellant was subsequently granted parole by the state of Pennsylvania and was released from prison.

On April 15, 2017, the Appellant filed a *pro se* PCRA petition, asserting that his new sentence was illegal. James F. Berardinelli, Esquire, was appointed counsel for the Appellant, and on March 31, 2018, counsel filed the "Defendant's Amended Post-Conviction Relief Act Petition" ("Amended Petition"). In the Amended Petition, counsel raised four claims concerning the illegality of the Appellant's sentence of thirty-five years to life: (1) that his sentence violated the holding of Miller and Montgomery; (2) that the imposition of a maximum term of life violates the constitutional mandate of proportionality; (3) that the imposition of the maximum term of life violated the requirement of meaningful release based on demonstrated maturity; and (4) that no statutory sentencing scheme exists which authorizes the imposition of the sentence of thirty-five years to life.

On September 6, 2018, the Commonwealth filed a "Response to Petition for Post-Conviction Relief" ("Commonwealth Response"). The Commonwealth agreed that the imposition of a mandatory maximum term of life was illegal in the Appellant's case. Commonwealth Response, p. 1. The Commonwealth asserted that "where defendants have demonstrated that they have been rehabilitated or that they have the capability of being rehabilitated, the mandatory imposition of continued,

4

lifetime punishment is disproportionate, and violates the requirements of individualized sentencing set forth in <u>Miller</u>." Commonwealth Response, p. 3. However, the Commonwealth acknowledged that the Pennsylvania Superior Court has ruled otherwise, and admitted that, based on the current applicable law, the Court had no alternative but to deny the Appellant's PCRA Petition. Commonwealth Response, p. 1.

On September 24, 2018, after independent review, this Court found that the claims raised by the Appellant were without merit, and issued a "Notice of Intent to Dismiss Pursuant to Pennsylvania Rule of Criminal Procedure 907" ("907 Notice"). The 907 Notice was filed and sent to the Appellant via certified mail. The Appellant did not respond. By order entered on October 22, 2018, this Court dismissed the Appellant's PCRA Petition, as amended.

On November 14, 2018, Appellant filed a "Notice of Appeal." On November 16, 2018, the Appellant was ordered to file a concise statement of matter raised on appeal, pursuant to Pa.R.A.P. 1925(b). On November 30, 2018, the Appellant filed his "Concise Statement of Errors Complained of on Appeal Filed Pursuant to Rule of Appellate Procedure 1925(b)" ("1925(b) Statement").

**ISSUES**

The following four issues were raised in the Appellant's 1925(b) Statement.

1) Did the lower court err in denying the defendant's PCRA Petition on the ground that the imposition of a maximum sentence of life imprisonment is

5

unconstitutional in light to the United States Supreme Court holdings in *Miller v. Alabama*, 567 U.S. 460 (2012) and *Montgomery v. Louisiana*, ___ U.S. ___, 136 S.Ct. 718 (2016)? [sic]

2) Did the Lower court err in denying defendant's PCRA petition on the ground that the imposition of a maximum sentence of life imprisonment violates the constitutional mandate of proportionality?

3) Did the lower court err in denying defendant's PCRA petition on the ground that the imposition of a maximum sentence of life imprisonment is unconstitutional since it deprives him of a meaningful opportunity for release and to be free of supervision based upon demonstrated maturity?

4) Did the lower court err in denying defendant's PCRA petition on the ground that the imposition of a maximum sentence of life imprisonment is unconstitutional since the only existing sentencing scheme in Pennsylvania for juveniles convicted prior to 2012 of first or second-degree murder has been invalidated?

## **DISCUSSION**

### *1. Timeliness*

In order to be considered by the courts, there must first be a determination that the PCRA petition was filed timely. Commonwealth v. Hutchins, 760 A.2d 50 (Pa. Super. 2000). A PCRA petition is considered timely when filed within one year of when the judgment of sentence becomes final, which occurs at the conclusion of direct review. 42 Pa.C.S. § 9545(b). The Appellant had 30 days after being sentenced to take a direct appeal. Pa.R.A.P. 903. The Appellant was re-sentenced on November 30, 2016, and had until December 30, 2016, to file a direct appeal. A direct appeal was not filed. Therefore, the Appellant had until December 30, 2017,

6

to file a timely PCRA petition. The Appellant filed his PCRA on April 15, 2017, which was within the time limit to file a timely PCRA petition.

## 2. *Standard of Review*

When reviewing the denial of PCRA relief, the Superior Court is "limited to determining whether the PCRA court's findings are supported by the record and without legal error." Commonwealth v. Wojtaszek, 951 A.2d 1169, 1170 (Pa. Super. 2008). When the PCRA court dismisses a petition without a hearing, the appellate court reviews the dismissal for an abuse of discretion. Commonwealth v. Collins, 888 A.2d 564, 579 (Pa. 2005). "The determination as to whether the trial court imposed an illegal sentence is a question of law; [the] standard of review in cases dealing with questions of law is plenary." Commonwealth v. Stradley, 50 A.3d 769, 772 (Pa. Super. 2012) (internal citations omitted).

## 3. *Merits*

When a defendant enters into a negotiated sentence, he waives his right to "[c]hallenge on appeal all non-jurisdictional defects except the legality of his sentence and the validity of his plea." Commonwealth v. Rush, 909 A.2d 805, 807 (Pa. Super. 2006). Challenges to the legality of sentence imposed pursuant to a negotiated sentence cannot be waived. Commonwealth v. Smith, 669 A.2d 1008, 1009 (Pa. Super. 1996).

7

All of the issues raised in the Appellant's 1925(b) Statement concern the legality of the maximum sentence of life that the Appellant received in accord with a negotiated plea agreement.

a) **Did the lower court err in denying the defendant's PCRA Petition on the ground that the imposition of a maximum sentence of life imprisonment is unconstitutional in light to the United States Supreme Court holdings in *Miller v. Alabama*, 567 U.S. 460 (2012) and *Montgomery v. Louisiana*, ___ U.S. ___, 136 S.Ct. 718 (2016)?**

In Miller v. Alabama, the United States Supreme Court held that "*mandatory life without parole* for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 567 U.S. 460, 465 (2012). Juveniles differ from adults in their lack of maturity and by being more vulnerable to negative outside pressures. Id. Children's overall character traits, however, are less fixed and are "less likely to be 'evidence of irretrievabl[e] deprav[ity].'" Id. at 471 (internal citations omitted). Due to these differences, mandatory life without parole for juvenile offenders ran afoul of the Eighth Amendment because it "prevent[ed] the sentencer from taking account of these central considerations." Id. at 474. Therefore, before sentencing a juvenile offender to life without the possibility of parole, the sentencer must be given the opportunity to consider the mitigating circumstances that come from being a juvenile. Id.

In Montgomery v. Louisiana, the United States Supreme Court held that its Miller decision created a new substantive rule of constitutional law and that the U.S.

8

Constitution required state collateral review courts to give retroactive effect to that rule. 136 S.Ct. 718, 736 (2016). These combined holdings mandate that all inmates serving sentences of life without parole, received as a result of a killing committed while under the age of eighteen, be resentenced, or paroled, in accordance with Miller, supra. The fact that the United States Supreme Court acknowledged that state courts could comply with Miller by granting parole, indicates that a life maximum sentence is legal, as long as the defendant, after consideration of the factors enumerated in Miller, is eligible for release.

The Miller Court only determined that it was a violation of the Eighth Amendment for juveniles, convicted of homicide, to be mandatorily sentenced to *life without the possibility of parole* without the sentencer first considering the mitigating qualities of youth.[1] Id. The Court did not hold that a maximum sentence of life was, in and of itself, unconstitutional. In fact, the Court found that a juvenile may still be sentenced to life without the possibility of parole, as long as the mitigating qualities of youth are considered. Id. at 480. The Miller Court did not find that a sentence of life *with* the possibility of parole was unconstitutional.

---

[1] This consideration includes: (1) the juvenile's susceptibility to influence and psychological damage, (2) the transient nature of the juvenile's irresponsibility, impetuousness, and recklessness, (3) the juvenile's background; and (4) the juvenile's mental and emotional development. Miller, at 476.

9

Therefore, the Appellant's claim that the imposition of a maximum life sentence is unconstitutional under <u>Miller</u> and <u>Montgomery</u> is meritless.

**b) Did the Lower court err in denying defendant's PCRA petition on the ground that the imposition of a maximum sentence of life imprisonment violates the constitutional mandate of proportionality?**

In his 1925(b) statement, the Appellant did not cite to any legal authority for the claim that a maximum life sentence violates the constitutional mandate of proportionality. However, in the Amended Petition, the Appellant cited <u>Songster v. Beard</u>, 201 F.Supp.3d 639, 642 (E.D. Pa., 2016) and <u>Garnett v. Wetzel</u>, ___ F.Supp.3d___, 2016 WL 4379244 at *3 (E.D. Pa. 2016). <u>See</u> Amended Petition, p. 2.[2]

"The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishment is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense." <u>Graham v. Florida</u>, 560 U.S. 48, 59 (2010) (internal citation omitted). "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather it forbids only extreme sentences which are grossly disproportionate to the crime." <u>Commonwealth v. Baker</u>, 78 A.3d 1044, 1047 – 48 (Pa. 2013) (internal citations omitted).

---

[2] The Commonwealth also cited <u>Songster</u> for the proposition that the Appellant's maximum life sentence violated the constitutional mandate of proportionality. <u>See</u> Commonwealth Response, p. 2.

10

The Miller Court found that the automatic imposition of a mandatory sentence of life without the possibility of parole, without consideration of the mitigating qualities of youth, "violate[s] the principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment." Miller, 567 U.S., at 489. In order to correct this violation the Miller Court mandated that the mitigating qualities of youth be considered before sentencing a juvenile who has been convicted of homicide to life without parole. Id. Montgomery then made the ruling in Miller retroactive and applicable to the Appellant. Montgomery, 136 S.Ct., at 736.

In accordance with Miller and Montgomery, the Appellant was entitled to a new sentencing hearing. The Appellant's sentence of life without the possibility of parole was vacated and, after a negotiated sentencing procedure, the Appellant was resentenced in accord with the negotiated sentence as recommended by the Commonwealth. The Appellant's new sentence for his conviction of first degree murder is thirty-five to life, and he has since been paroled. The Appellant offers no authority holding that such a sentence is disproportionate to the crime of first degree murder.

However, in his Amended Petition, the Appellant relies on Songster and Garnett for his assertion that his sentence violates the principle of proportionality of the Eighth Amendment. See Amended Petition, p. 2. Both Songster and Garnett concern juvenile lifers, who filed habeas corpus petitions seeking to vacate sentences

11

of life without parole, though convicted before <u>Miller</u>, and those petitions were pending when <u>Montgomery</u> made <u>Miller</u> retroactive. <u>Songster v. Beard</u>, 201 F.Supp.3d 639 (E.D. Pa., 2016); <u>Garnett v. Wetzel</u>, ___F.Supp.3d___, 2016 WL 4379244 at *1 (E.D. Pa. 2016). The United States District Court for the Eastern District of Pennsylvania, granted both Songster's and Garnett's habeas petitions, and remanded the cases to state court for resentencing pursuant to the dictates of <u>Miller</u> and <u>Montgomery</u>. <u>Id</u>; <u>Id</u>. The Court stated in both opinions what the requirements for re-sentencing should be:

> In Pennsylvania, the sentencing judge must fix both the minimum and the maximum of the term of imprisonment after an individualized hearing taking into consideration all relevant facts. Routinely fixing the maximum of each sentence at life contradicts a sense of proportionality and smacks of categorical uniformity. A sentencing practice that results in every juvenile's sentence with a maximum term of life, regardless of the minimum term, does not reflect individualized sentencing.

<u>Id</u>. at 642; <u>Id</u>. at *2. However, it is significant to note that both opinions ended with the following:

> It is not our role to interpret Pennsylvania law in these circumstances. We do not attempt to usurp the authority of the state court to impose the sentence it deems appropriate so long as it adheres to the constitutionally mandated requirements as set forth in *Miller* and *Montgomery*.

<u>Id</u>. at 643; <u>Id</u>. at *4.

12

While the court in <u>Songster</u> and <u>Garnett</u> expressed the view that a mandatory maximum life sentence, with or without the possibility of parole, "contradicts the sense of proportionality," it was also noted that it was not the place of the federal courts to dictate how the state would resentence a juvenile lifer.

As noted in <u>Commonwealth v. Seskey</u>, "decisions of the federal district courts are merely persuasive authority. On the other hand, this Court is duty-bound to effectuate our Supreme Court's decisional law. <u>Batts II</u>,[3] which our Supreme Court decided after <u>Montgomery</u>, explicitly holds that the trial court was required to sentence Appellee to a maximum term of life imprisonment." 170 A.3d 1105, 1109 (Pa. Super. 2017); <u>See</u> <u>Commonwealth v. Olds</u>, 192 A.3d 1188 (Pa. Super. 2018).

It is clear that the Pennsylvania Supreme Court mandated sentencing courts to resentence juvenile lifer's to a maximum term of life. The Appellant was resentenced in accord with applicable and controlling precedent. The Appellant's claim that his sentence of thirty-five years to life for the crime of first degree murder violates the mandate of proportionality is without merit.

---

[3] <u>Commonwealth v. Batts</u>, 163 A.3d 410 (Pa. 2017).

13

**c) Did the lower court err in denying defendant's PCRA petition on the ground that the imposition of a maximum sentence of life imprisonment is unconstitutional since it deprives him of a meaningful opportunity for release and to be free of supervision based upon demonstrated maturity?**

The question of whether a juvenile convicted of first or second degree murder must be given a meaningful opportunity *to be free of supervision* based upon demonstrated maturity was not raised before this Court, and therefore should not be considered on appeal.

In his Amended Petition, the Appellant claimed that "[d]efendant's maximum term of life would also violate the requirement that a juvenile must have a meaningful opportunity for release based upon demonstrated maturity. Graham v. Florida, 560 U.S. 48, 75 (2010)." See Amended Petition, p. 2.

It wasn't until the 1925(b) Statement was filed that the Appellant asserted that "the imposition of a maximum life sentence of life imprisonment is unconstitutional since it deprives him of a meaningful opportunity for release *and to be free of supervision* based upon demonstrated maturity." See 1925(b) Statement, p. 1 (emphasis added). Claims not raised before the PCRA court cannot be raised for the first time on appeal, therefore, the Appellant waived his claim that his sentence is unconstitutional because it does not give him the opportunity "to be free of supervision" based on demonstrated maturity. Commonwealth v. Bond, 819 A.2d 33, 52 (Pa. 2002). Further, there is no legal authority to support the Appellant's contention that his sentence is illegal, because he was released from incarceration.

14

The Appellant's sentence of thirty-five years to life is legal. If the Appellant wishes to seek early termination of parole at some time in the future based on "demonstrated maturity", he may consider filing a petition with the Board of Pardons for the Commonwealth of Pennsylvania. Pennsylvania Constitution, Article 4, § 9. A request for early termination of parole, or to modify any conditions of parole, is not properly before this Court.

While the Appellant's assertion that his maximum sentence of life is unconstitutional because it deprives him of a meaningful opportunity of release is properly before the Superior Court on appeal, the claim is factually incorrect and meritless.

Again, in his 1925(b) Statement, the Appellant does not cite to any legal authority for the assertion that a maximum sentence of life is unconstitutional because it deprives him of the meaningful opportunity for release based on demonstrated maturity. See 1925(b), p. 1. However, in his Amended Petition, the Appellant cited Graham v. Florida, 560 U.S 48, 75 (2010). See Amended Petition, p. 2.

In Graham, a precursor to Miller, the United States Supreme Court held that sentencing juveniles to life without the possibility of parole for non-homicide offenses violated the Eighth Amendment. Id. To cure the violation the Graham Court found that "[a] State is not required to guarantee eventual freedom to a juvenile

15

offender convicted of a nonhomicide [sic] crime. What the State must do, however, is give defendants...some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Id. at 75. In light of the principle in Graham, "that imposition of the State's most severe penalties on juvenile offenders cannot proceed as though they were not children," the Miller Court held that the Eighth Amendment mandated the sentencing court to consider the mitigating qualities of youth before imposing a life without the possibility of parole sentence. Miller, at 474.

At a negotiated resentencing on November 30, 2016, before accepting the recommended sentence, this Court considered the evidence presented in the Sentencing Memorandum, which included information about: (1) the crime; (2) the Appellant's background; and (3) his accomplishments while incarcerated. The Appellant's sentence of life without the possibility parole was then vacated and he was resentenced to thirty-five years to life. As a result of the sentence imposed, the Appellant was eligible for parole consideration. The Appellant was granted parole and released from state incarceration and remains on parole. The Appellant has been afforded the relief mandated by the Miller Court.

Therefore, the Appellant's claim that he has been denied the opportunity for release based on a demonstrated maturity and rehabilitation during the time he was incarcerated, is factually inaccurate and without merit.

16

**d) Did the lower court err in denying defendant's PCRA petition on the ground that the imposition of a maximum sentence of life imprisonment is unconstitutional since the only existing sentencing scheme in Pennsylvania for juveniles convicted prior to 2012 of first or second-degree murder has been invalidated?**

As a result of the United States Supreme Court's decision in <u>Miller</u>, the Pennsylvania General Assembly passed, and the Governor signed into law, a new sentencing statute for offenders under the age of eighteen convicted of first or second degree murder. 18 Pa. C.S. § 1102.1. The statute is not retroactive and is not applicable to juvenile offenders convicted before <u>Miller</u>. Under section 1102.1, a juvenile convicted of second degree murder, which was committed when the juvenile was over the age of 15, would be sentenced to a "term of imprisonment the minimum of which shall be at least 30 years to life." 18 Pa. C.S. § 1102.1(c)(1).

The Pennsylvania Supreme Court has held that resentencing a juvenile offender convicted of first degree murder to a sentence with a maximum of life is constitutional and in accordance with <u>Miller</u> and <u>Montgomery</u>. <u>Commonwealth v. Batts</u>, 66 A.3d 287 (Pa. 2013)("<u>Batts I</u>"). Qu'eed Batts ("Batts"), was convicted of first degree murder and sentenced, under 18 Pa. C.S. § 1102(a), to life without the possibility of parole for a killing committed when Batts was fourteen years old. <u>Id</u>. While the case was on direct appeal, the United States Supreme Court decided <u>Miller</u> and section 1102.1 was enacted by the Pennsylvania General Assembly and signed into law in Pennsylvania. <u>Id</u>.

17

On appeal, Batts argued that any "remedy that would permit a court to impose a sentence of life imprisonment with the possibility of parole" on a juvenile convicted of first degree murder was unconstitutional under the Eighth Amendment, because the nature of such a sentence "fails to take into account the age-related factors set forth by the [Miller] Supreme Court." Id. at 294. Specifically Batts argued that section 1102(a) mandated a maximum sentence of life without parole, which Miller made unconstitutional as applied to juveniles, and section 1102.1 could not apply to him because it was not retroactive. Id. Therefore, Batts argued, his sentence "should be based on the most severe lesser included offense, namely, third-degree murder, with a maximum term of forty years' imprisonment." Id. at 294 (internal citations omitted).

However, the Pennsylvania Supreme Court held that "Miller neither barred imposition of a life-without-parole sentence on a juvenile categorically nor indicated that a life sentence with the possibility of parole could never be mandatorily imposed on a juvenile." Id. at 296 (internal citations omitted). Miller only mandated a "judicial consideration of the appropriate age-related factors" set forth in Miller before the imposition of a sentence of life without parole upon a juvenile. Id. at 296.

Further, the Pennsylvania Supreme Court agreed with the Commonwealth's assertion that the offending portion of the Pennsylvania sentencing scheme was 61 Pa. C.S. § 6137, which mandates that parole may not be granted for those serving

18

life sentences, could be severed from section 1102(a) as it applied to juveniles, leaving the remaining provisions intact. Id. After severing the offending provision, section 1102(a) "still require[s] that the court impose a sentence of life imprisonment for a juvenile convicted of first-degree murder." Id. at 294 (internal citations omitted). Therefore, for "those subject to non-final judgements of sentence for murder as of Miller's issuance" would be "subject to a mandatory maximum sentence of life imprisonment as required by Section 1102(a), accompanied by a minimum sentence determined by the common pleas court upon resentencing." Id. at 297. The case was remanded for Batts to be resentenced in accordance with the Court's opinion. Id.

On remand, again, Batts was sentenced to life without the possibility of parole and appealed. Commonwealth v. Batts, 163 A.3d 410 (Pa. 2017) ("Batts II"). While Batts did not raise the legality of his sentence on this appeal, the arguments raised by way of an *amicus* brief filed by the Pennsylvania Association of Criminal Defense Lawyers ("PACDL") and adopted by Batts "implicate[d] the legality of his sentence, and therefore [was] not subject to waiver" Id. at 441. The PACDL argued that the Batts I holding was an impermissible use of the Court's severance authority because 42 Pa. C.S. § 9756(b)(1) required that a minimum term of imprisonment cannot be "greater than half of the maximum sentence – a mathematical impossibility when the maximum term of incarceration is life." Id. at 440. The PACDL also argued

19

that severance was improper because section 1102.1 excluded convictions pre-Miller, and therefore the Court could not "presume that the General Assembly would have enacted the remaining portions of section 6137(a) without the limitations on the ability to parole a juvenile sentenced to life in prison." Id. at 440. Therefore, Batts should be resentenced on the charge of third-degree murder.

The Pennsylvania Supreme Court found, that while the PACDL's argument was not raised or addressed in Batts I, the "holding implicitly required severance of section 9756(b)(1)'s requirement that a minimum sentence can be no more than half of the maximum sentence for juveniles convicted of first-degree murder prior to Miller." Id. at 442. The severance of section 9756 did not create an impermissible obstacle since 1 Pa. C.S. § 1925 provides that "[t]he provisions of **every statute** [are] severable." Id. at 442 (emphasis in original) (internal citation omitted). Pennsylvania courts must sever invalidated portions of a statute, while leaving the valid portions intact, unless:

> (1) The remaining valid provisions depend on and "are so essentially and inseparably connected with" the voided provision that the court could not presume that the General Assembly would have enacted the valid portion of the statute without the now-voided provision, or (2) the remaining portions of the statute "are incapable of being executed in accordance with legislative intent.

Id. at 441.

The Court found that the removal of the mandate set forth in section 9756(b)(1) did "nothing more than eliminate the ceiling for the minimum term of imprisonment a juvenile sentenced to life with parole may receive." Id. at 442. The elimination aligned with the expression of legislative intent for sentencing juveniles convicted of murder under section 1102.1. Id. Section 1102.1(e) made clear that only the minimum sentences stated in the statute is required and that "[n]othing under this section shall prevent the sentencing court from imposing a minimum sentence greater than that provided in the section." Id. at 443; 18 Pa. C.S. § 1102.1(e). On the other hand, if the Court could not sever section 6137(a)(1) and section 9756(b)(1) from section 1102(a), then the only other "option would be to release each of the hundreds of juveniles convicted of first degree murder and sentenced to life without parole." Id. at 444.

The Court noted that though section 1102.1 did not apply to Batts due to the date of his conviction, it nonetheless provided clear expression of legislative intent as it related to sentencing juveniles convicted of first degree murder:

> The General Assembly would preserve the remainder of the parole statute, sever the minimum sentence ceiling of section 9756(b)(1) and permit these defendants to be sentenced to life with the possibility of parole, rather than have no sentence at all for juveniles convicted of first degree murder.

Id. at 444.

21

In the four years that passed between <u>Batts I</u> and <u>Batts II</u>, the General Assembly did not pass a statute addressing sentencing for juveniles convicted of murder pre-<u>Miller</u> and did not amend the provisions severed in <u>Batts I</u>. <u>Id</u>. The General Assembly not taking these action gave rise to the presumption that it is in agreement with the holding of <u>Batts I</u>. <u>Id</u>.

While section 1102.1 does not retroactively apply to those juveniles sentenced to life without parole pre-<u>Miller</u>, the Court noted that "we cannot ignore the policy determination made by the General Assembly as to the minimum sentence a juvenile convicted of first-degree murder must receive." <u>Id</u>. at 457. Intending to advance the goals of uniformity and certainty in sentencing decisions:

> [W]e believe that section 1102.1 will "help frame the exercise of judgment by the court imposing a sentence" and "may provide an essential starting point…that must be respected and considered" when determining the appropriate minimum sentence for a juvenile convicted of first-degree murder prior to the <u>Miller</u> decision.

<u>Id</u>. at 458 (internal citations omitted).

Even though section 1102.1 is inapplicable to the Appellant because of the date of his conviction, it allows courts to infer that the legislative intent of the General Assembly for juveniles over the age of fifteen who are convicted of first degree murder to be sentenced to a term not less than that of thirty-five years to life. 18 Pa. C.S. § 1102.1(c)(1). Through a negotiated resentencing, the Appellant was sentenced to thirty-five years to life for his conviction of first degree murder, and

22

because he had served forty-one years of his original sentence, the Appellant became immediately eligible for parole consideration. N.T. 4/20/2017 p. 36, 45. The Appellant was subsequently paroled. For the above reasons, the Appellant's maximum sentence of life is constitutional under the Eighth Amendment.

## CONCLUSION

For all the reasons set forth herein, the Appellant's sentence of thirty-five years to life is not illegal and should be affirmed.

DATE: _January 15, 2019_

BY THE COURT: _Kathryn S. Lewis_

23